**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **APPRIO, INC. AND APPRIOHEALTH, LLC,** | § § § | |
| **Plaintiffs,** | § § | |
| **vs.** | § § | **CIVIL ACTION NO. _____** |
| **INVICTA HEALTH SOLUTIONS, LLC,** | § § | |
| **Defendant.** | § § | |

**APPRIO, INC.'S AND APPRIOHEALTH, LLC'S**
**ORIGINAL COMPLAINT AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT**:

COME NOW Plaintiffs, Apprio, Inc. ("Apprio") and ApprioHealth, LLC ("ApprioHealth"), by and through its undersigned counsel of record, files this Complaint against Defendant Invicta Health Solutions, LLC ("Invicta") and alleges as follows:

**NATURE OF ACTION**

1.      Apprio and ApprioHealth invested a significant amount of time and money into the creation and development of ApprioHealth to be a leading Revenue Cycle Management company for commercial healthcare providers. ApprioHealth recruited a team to help grow the business, which included Dominic "Donny" Zamora, Jude Crowell, George "Derek" Shaw, Robert "Trey" Dart and Tiffany Echevarria. ApprioHealth and Apprio required that Dominic "Donny" Zamora, Jude Crowell, George "Derek" Shaw, Robert "Trey" Dart and Tiffany Echevarria enter into certain agreements to protect the confidential and trade secret information of Apprio and ApprioHealth, which included non-compete and non-solicitation clauses. After ApprioHealth hired a team to develop the business and set internal goals for the team. ApprioHealth invested millions of dollars into the business and

also into the leadership team. The team, headed by Mr. Zamora, consistently failed to meet expectations and revenue goals. After repeated failures to perform and unfulfilled promises, it was clear that Mr. Zamora's team was unable to perform as promised and action was needed to be taken to cut Apprio and ApprioHealth's loses. Accordingly, the principals of Apprio and ApprioHealth decided to terminate Mr. Zamora and his team.

2.      During which team, Mr. Zamora and Mr. Crowell evidenced their intent to try and purchase ApprioHealth. In light which, Apprio and ApprioHealth negotiated in good faith for this potential sale. Despite such, the group of former employees attempted to purchase the business for nothing. One of the former employees even joked that they should offer a Diet Coke for the business.

3.      Ultimately, instead of deciding to buy the business, Mr. Zamora, and his compatriots decided to steal it. Mr. Zamora, Mr. Crowell and Mr. Dart subsequently formed a competing business based on the inroads made at ApprioHealth, going so as far as telling customers that it was merely a "name change."  Plaintiffs improperly, and in breach of their contracts, stole the Apprio Parties' trade secrets and employees for use in their competing business. Most importantly, Plaintiffs took ApprioHealth's pipeline of customers, a group of large hospital networks, and their contracts to their competing business. As a result, the Apprio Parties lost millions of dollars and ApprioHealth's value was significantly decreased.

## THE PARTIES

4.      Plaintiff Apprio, Inc. ("Apprio"), is a Delaware corporation with its principal place of business in Washington, D.C. Apprio is qualified to do business in Texas, but does not maintain a principal place of business within the State of Texas.

2

5.      Plaintiff ApprioHealth LLC ("ApprioHealth") is a Delaware limited liability company with its domicile in Florida and Maryland based on the domiciles of its component members.

6.      Plaintiffs Apprio and ApprioHealth shall be collectively referred to herein as "Apprio Parties" or "Plaintiffs."

7.      Defendant Invicta Health Solutions, LLC ("Defendant" or "Invicta") is a Texas limited liability company with Zamora, Crowell, and Shaw as its three (3) managing members. Based on the domicile of its members, Invicta is domiciled in Texas and Tennessee. Invicta may be served by and through its registered agent for service of process, George Derek Shaw, at its Registered Office, 825 Town and County Lane, Suite 1200, Houston, Texas 77024 or through its attorney in a related matter, Larry Labanowski, 2134 Welch St, Houston, TX 77019.

## JURISDICTION AND VENUE

8.      As referenced in this Complaint, Invicta is a Texas company with its principal place of business in Harris County, Texas.

9.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Specifically, Plaintiff Apprio is a Delaware with its principal place of business in Washington, D.C. It does not have a principal place of business in the State of Texas. Plaintiff ApprioHealth is a limited liability company with its component members being domiciled in Florida and Maryland. Defendant Invicta is a Texas limited liability company with its component members being domiciled in Texas and Tennessee. Therefore, complete diversity of citizenship exists.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Apprio and ApprioHealth's claims occurred in this district.

11. This Court has personal jurisdiction over the Defendant because the Defendant is a Texas entity and a Texas citizen operating and residing in the State of Texas.

## RELATED LITIGATION AND PARTIES

12. Dominic Zamora ("Zamora") was the President of ApprioHealth and surreptitiously formed Invicta and now serves as its Chief Executive Officer.

13. Jude Crowell ("Crowell") was the Chief Client Officer at ApprioHealth. Mr. Crowell formed Invicta and serves as its Chief Client Officer.

14. George Derek Shaw ("Shaw") was the Division President, Revenue Cycle Management for ApprioHealth. Mr. Shaw later founded Invicta and serves as its Division President.

15. Robert Trey Dart ("Dart") was the Vice President of Business Development at ApprioHealth. Mr. Dart later helped form Invicta and serves as its Vice President of Business Development.

16. Tiffany Echevarria ("Echevarria") was the Vice President of Revenue Integrity. Ms. Echevarria helped form Invicta and serves as its Vice President of Operations.

17. Zamora, Shaw, Dart, Echevarria, and Crowell are referred to as the **Invicta Schemers**.

18. After receiving a cease-and-desist letter from Apprio and ApprioHealth warning him that he was breaching his obligations to the Apprio Parties, Zamora filed a lawsuit on December 12, 2020 in the 281st Judicial District Court of Harris County, Texas seeking a

4

declaration that his non-compete was unenforceable and also alleging claims of fraudulent inducement and misrepresentation.  This case was later removed to the Southern District of Texas, and is currently pending before Judge Keith Ellison as Cause No. 4:21-CV-0875, *Dominic Zamora v. ApprioHealth, LLC, Apprio, Inc. and Darryl Britt*.

19.    Additionally, on February 23, 2021, Mr. Shaw filed a lawsuit in the 151st Judicial District Court of Harris County, Texas, as Cause No. 2021-10429, *Derek Shaw v. ApprioHealth, LLC and Apprio, Inc*. This case was later removed to the Southern District of Texas, and is currently pending before Judge Keith Ellison as Cause No. 4:21-cv-00876, *Derek Shaw v. ApprioHealth, LLC and Apprio, Inc*.

20.    Additionally, on February 24, 2021, Mr. Crowell, Mr. Dart and Ms. Echevarria filed a lawsuit in the 190th Judicial District Court of Harris County, Texas, as Cause No. 2021-10753, *Robert Trey Dart, Jude Crowell, and Tiffany Echevarria v. ApprioHealth, LLC and Apprio, Inc*. This case was later removed to the Southern District of Texas, and is currently pending before Judge Keith Ellison as Cause No. 4:21-cv-00877, *Robert Trey Dart, Jude Crowell, and Tiffany Echevarria v. ApprioHealth, LLC and Apprio, Inc*.

21.    Immediately after Plaintiffs filed their actions in Harris County District Court they filed motions to consolidate the actions on April 19, 2021, even before service of the Apprio Parties. Upon removal of these actions to Federal Court the parties filed an agreed motion to consolidate on April 26, 2021.

22.    Of note, the Invicta Schemers' roles at ApprioHealth and at Invicta are substantially the same:

5

| The Invicta Schemers' Roles at ApprioHealth vs. Invicta | | |
|---|---|---|
| | Role at ApprioHealth | Role at Invicta[1] |
| Donny Zamora | President | Chief Executive Officer |
| Jude Crowell | Chief Client Officer | Chief Client Officer |
| Derek Shaw | Division President, Revenue Cycle Management | Division President |
| Trey Dart | Vice President of Business Development | Vice President of Business Development |
| Tiffany Echevarria | Vice President of Revenue Integrity | Vice President of Operations |

## BACKGROUND

23.     ApprioHealth and Apprio are in the business of providing services in the healthcare industry by utilizing technology to assist healthcare providers in the areas of enrollment, disability, liability, recovery, and placement services. Apprio has traditionally been in the business of providing these services to the federal government, but through its affiliate ApprioHealth, it began targeting private sector healthcare providers.

24.     The Invicta Schemers all worked with Apprio and its affiliate ApprioHealth but underperformed. In light of which, ApprioHealth decided that it was necessary to terminate the Invicta Schemers on or about January 15, 2020.

25.     Ironically, at that time, Zamora and Crowell were in negotiations with Apprio to potentially purchase ApprioHealth and all of its assets including, but not limited to, its customer list and prospective customer list, as well as other intellectual property, such as software programs that were configured for its business operations. Apprio, Zamora, and Crowell engaged in countless conversation about the purchase and exchanged preliminary term sheets, but in the end, Zamora and Crowell were unwilling to complete the purchase.

---

[1] *See* Exhibit M, showing The Invicta Schemers' roles at Invicta. The Invicta Schemers' roles at Invicta can be found on Invicta's website at https://www.invictahs.com/about-invicta-health-solutions/#leadership, accessed on May 4, 2021.

26.     As early as January 27, 2020, the Invicta Schemers were already plotting to take ApprioHealth's business and had developed an "implementation plan" to take over a contract that ApprioHealth was negotiating with Orlando Health. The Invicta Schemers created an "ApprioHealth" Gmail account for this purpose, as "appriohealth1@gmail.com":

> **From:** Tiffany Echevarria <techevarria806@gmail.com>
> **Date:** January 27, 2020 at 1:02:34 PM CST
> **To:** rnapier@insight.rr.com
> **Cc:** appriohealth1@gmail.com, donnyzamora1@gmail.com,
> judexcrowell@gmail.com, derek@boxcarsgames.com
> **Subject: Re: Orlando Health Implementation Plan**
>
> Hey Rod!
>
> I'm on a flight to Houston tomorrow so I'll be available via phone only from 8-10am but then will be on flight and won't be grounded until about 2pm CST.
>
> Or I can do 4pm EST today either works just shoot me an invite for call. Thanks!
>
> On Mon, Jan 27, 2020, 1:59 PM <rnapier@insight.rr.com> wrote:
> > Tiff,
> >
> > Excellent documents!!  We should probably jump on a call and discuss what we want to send to Orlando Health vs. what we use internally.  The PowerPoint is something I can see us sending to them vs. the detailed excel sheets.  The PowerPoint provides a nice overview of the process...week by week.
> >
> > Maybe we jump on a call tomorrow morning?
> >
> >
> > ----------------------------------------
> >
> > From: "Tiffany Echevarria"
> > To: donnyzamora1@gmail.com, judexcrowell@gmail.com,
> > derek@boxcarsgames.com, rnapier@insight.rr.com
> > Cc:
> > Sent: Monday January 27 2020 1:46:16PM
> > Subject: Orlando Health Implementation Plan
> >
> > Good Afternoon!

27.     By February 5, 2020, Mr. Zamora, Mr. Shaw, and Mr. Crowell in their internal emails had sworn off purchasing ApprioHealth for anything other than the nominal value of a Diet Coke, while at the same time admitting that the contracts they were looking to purchase had value.

28.    In an email from February 5, 2020, at 12:44 am Mr. Shaw stated:

1.    Following the Ghost maneuver that Darryl just pulled with Edgewater, we simply offer to take the company off of his hands as a straight EIN transfer at no cost to us (you can give him a Coke if you want Brother Jude). Much the contrary, he and Josh will need to incur the bulk of the transfer documentation creation and redlining expenses, however all rights to utilize the business name will be transferred over immediately so we can attend Dixie in good faith. Bottom line… he just blew any chance he had of selling the company by thumbing his nose at Tom Watters (we know that isn't true, but makes for a good story), so Donny shouldn't sacrifice any further personal relationship currency to find another buyer. We are willing to accept the contracts and the debt as of Feb 1. We get AH for $0… Darryl gets out from under the guillotine.

29.    Yet, in the same email and in its attached projections, Mr. Shaw confirms that the Invicta Schemers anticipate making significant profit off of the deal:

these improvements in employee yield. I know this retooling is all theoretical, but I am confident the answer is here. I believe these levels of profit and ramp acceleration are obtainable given what we have worked to hard to build. I hope this helps gents… and

30.    As of February 17, 2020, The Invicta Schemers and the Apprio Parties were still in negotiations, but it was clear that the Apprio Parties were unwilling to go with the Invicta Schemers attempt to acquire the company or its assets for free:

I spoke to Darryl. I believe you may have misunderstood him. It was never his intent that Donny and you would take the OrlandoHealth and CHS contracts without some value flowing back to Apprio.

As you know, Donny most recently offered $137,500 upfront + 3% of the first $7mm of revenue in exchange for ApprioHealth – which would have included all of its liabilities, the pending OrlandoHealth and CHS contracts and the pipeline. I think Darryl may have mentioned to you that this offer was quite a bit lower than previous indications of interest Donny made, which included up to $1.25mm upfront with a percentage of revenue commission in exchange for ApprioHealth.

Given that time is tight and that Darryl has other ongoing discussions regarding the ApprioHealth business, in the interest of trying to make this as simple as possible, Darryl is willing to accept $1mm in upfront payment for the OrlandoHealth and CHS contracts. This would not be an acquisition of ApprioHealth, so the liabilities of ApprioHealth would stay where they are, and Donny and you would only acquire the contract assets. Given that the acquisition would only be for the assets (and not include the company's liabilities), the price Darryl is asking for is quite a bit less than the total value Donny most recently offered (inclusive of the monthly revenue commissions), and is significantly less than the previous indications of interest that Donny had shared.

8

31.     In response to that email from the Apprio Parties, Jude claims that he and the Invicta schemers "don't have money for an upfront payment" for a purchase of ApprioHealth.  Jude also attempts to claim that "ApprioHealth doesn't have a contract without me and at the same time we [the Invicta Schemers] don't have the bandwidth to give Darryl what he wants." It is clear that the Invicta Schemers are attempting to get something, ApprioHealth's intellectual property and prospective contracts, for nothing.

32.     Much to Apprio and ApprioHealth's surprise, instead of going through with this transaction with the Apprio Parties, Zamora, Crowell and Shaw as founding member-managers, along with Dart and Echevarria, as employees, attempted to create their own version of ApprioHealth by taking ApprioHealth's information, knowhow, and pipeline of clients to their newly created company, Invicta Health Solutions, LLC ("Invicta"). Such acts were, among other things, clear violations of the restrictive covenants as stated in their agreements with Apprio and ApprioHealth.

33.     In fact on February 17, 2020, Mr. Zamora, Mr. Shaw and Mr. Crowell filed a Certification of Formation with the Texas Secretary of State to form their company, Invicta.

34.     As early as February 20, 2020, the Invicta Schemers were fast at work on developing logos and foundation documents related to Invicta, all the while, they were discussing a potential purchase of ApprioHealth with the Apprio Parties.

35.     On February 24, 2020, Mr. Crowell was forwarding contracts, which were drafted by Apprio and ApprioHealth employees to use for his purposes at Invicta. This is direct theft of Apprio and ApprioHealth's intellectual property.

| From: | Jude Crowell [judexcrowell@gmail.com] |
|---|---|
| on behalf of | Jude Crowell <judexcrowell@gmail.com> [judexcrowell@gmail.com] |
| Sent: | 2/24/2020 2:21:07 PM |
| To: | dzamora@invictahs.com; dshaw@invictahs.com |
| Subject: | Fwd: FW: CHS RFP |
| Attachments: | Secondary Eligibility RFP 20191125-Final.docx; Apprio Health - CHS ISA (marked - 11252019).docx; ApprioHealth - Vendor Security Risk Assessment Form_WCH.docx; ApprioHealth MSA - CHS (November 2019) (marked) (1).docx |

---------- Forwarded message ----------
From: **Jude Crowell** <jcrowell@appriohealth.com>
Date: Mon, Feb 24, 2020 at 3:20 PM
Subject: FW: CHS RFP
To: judexcrowell@gmail.com <judexcrowell@gmail.com>

## THE INVICTA SCHEMER'S EMPLOYMENT WITH APPRIOHEALTH

36.     Until January 15, 2020, Zamora worked for ApprioHealth as the President of Commercial Health, Shaw worked for ApprioHealth as Division President, Dart worked for ApprioHealth as Vice President of Business Development, Crowell worked for ApprioHealth as Chief Client Officer, and Echevarria worked for ApprioHealth as Vice President of Revenue Integrity.

37.     During the time Zamora, Shaw, Dart, Crowell and Echevarria worked for ApprioHealth, they had access to, and were actively involved with various types of the Apprio Parties' Proprietary Information, including, but not limited to, the Apprio Parties' client lists and prospective client lists, as well as various other types of intellectual property (such as software programs that were configured for the Apprio Parties' business operations).

38.     Four (4) of the healthcare entities that were in the Apprio Parties' "pipeline" to provide services to were Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health.

39. During the period Zamora, Shaw, Dart, Crowell, and Echevarria were employed with the Apprio Parties, Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health were listed on the Apprio Parties' prospective client list.

40. Zamora, Shaw, Dart, Crowell, and Echevarria was actively involved with, and had intimate knowledge of, the Apprio Parties' prospective client list during the time he was employed with the Apprio Parties. The Apprio Parties, however, were unaware that The Invicta Schemers planned to wrongfully use this information against the Apprio Parties, in violation of their agreements and the law.

41. For instance, before leaving ApprioHealth, Crowell emailed himself documents regarding certain clients at ApprioHealth to his personal email address. *See* **Exhibits A & B**,[2] emails from Jude Crowell's ApprioHealth email to his personal Gmail account. Similarly, before leaving ApprioHealth, Zamora also emailed himself documents regarding certain clients at ApprioHealth to his personal email address. *See* **Exhibit C**, email from Donny Zamora's ApprioHealth email to his Gmail account.

42. Further on February 17, 2020, a contact at prospective client, Orlando Health, asked Crowell why his team was making a "name change," and asked him to explain the rationale for the change. In his email, the client contact referenced a phone conversation on Friday, February 15, 2020, where Crowell informed the contact about the name change. Crowell had obviously communicated with this prospective client, who was close to coming to an agreement with ApprioHealth, that the company's name was merely changing and that they would continue to do

---

[2] In addition to redacting attorney-client communications, the Apprio Parties have redacted confidential and proprietary information in Exhibits A through D, F and G, out of an abundance of caution until a protective order is in place in this matter. If requested by the Court before a protective order is in place, the Apprio Parties can also share these documents under seal.

the same business deal together at the new company created by The Invicta Schemers, namely

Invicta. *See* **Exhibit D**, email from John Mendez to Jude Crowell regarding "Name Change."

43.     On February 17, 2020, unbeknownst to Apprio or ApprioHealth, Zamora, Crowell

and Shaw filed a certificate of formation as member-managers of a new limited liability company,

Invicta. *See* **Exhibit E**, Certificate of Formation of Invicta Health Solutions, LLC.

### I.  ZAMORA'S AND CROWELL'S COMPENSATION PLAN AGREEMENTS

44.     While working for ApprioHealth as the President of Commercial Health, Zamora

signed a contract with ApprioHealth titled ApprioHealth, LLC Incentive Compensation Plan

Incentive Bonus Award Agreement (hereinafter "Zamora Compensation Plan Agreement"). A

copy of the Zamora Compensation Plan Agreement is attached hereto as **Exhibit F**.

45.     While working for ApprioHealth as the Chief Client Officer, Crowell signed a

contract with ApprioHealth titled ApprioHealth, LLC Incentive Compensation Plan Incentive

Bonus Award Agreement (hereinafter "Crowell Compensation Plan Agreement"). A copy of the

Crowell Compensation Plan Agreement is attached hereto as **Exhibit G**. Together the Zamora

Compensation Plan Agreement and the Crowell Compensation Plan Agreement are referred to as

"Compensation Plan Agreements."

46.     Within the Compensation Plan Agreements, any capitalized term used but not

explicitly defined in the Compensation Plan Agreements shall have the meaning ascribed to such

term in the Company's Incentive Compensation Plan, which is attached to the Compensation Plan

Agreements as Exhibit A. *See* Exs. F & G, p. 1 at preamble. Copies of the Incentive Compensation

Plans are on page 11 of Exhibits F & G.

47.     The Incentive Compensation Plans define "Covered Party" as "the Company and/or

any Subsidiaries or Affiliates of the Company." *See* Exhibits F & G, p. 13 at ¶(l). Thus, under the

terms of the Compensation Plan Agreements, both Apprio Parties are entitled to exercise all

remedies available under law or equity with respect to any breach by Zamora and Crowell. *See* Exhibits F & G, p. 3 at ¶7.

48.     The Compensation Plan Agreements expressly cover ApprioHealth and its subsidiaries or affiliates. Because of this, the Compensation Plan Agreements also covers Apprio as an affiliate of ApprioHealth. *See* Exs. F & G, p. 13 at ¶(l). Under the Compensation Plan Agreements, Apprio is a non-signatory party or, at the very least, a third party beneficiary with rights flowing from the agreement.

49.     By executing the Compensation Plan Agreements, Zamora and Crowell agreed to the numerous restrictions delineated in Paragraph Numeral Seven (7) of the Compensation Plan Agreements. *See* Exhibit F & G, p. 3 at ¶7. These restrictions included but were not limited to: (1) Non-Disclosure of Confidential/Proprietary Information and Trade Secrets (*see id.* at ¶7(a)); (2) Non-Removal of Company Property (*see id.* at ¶7(b)); (3) Non-Solicitation of Covered Party Personnel (*see id.* at ¶7(e)); and (4) Non-Solicitation of Covered Party Customers (*see id.* at ¶7(f)).

50.     The Compensation Plan Agreements calls for the application of Delaware law, without regard to conflicts of laws. *See id.* p. 7, at ¶13.

## II.  <u>ZAMORA'S AND ECHEVARRIA'S PROPRIETARY INFORMATION AGREEMENTS WITH APPRIOHEALTH</u>

51.     Zamora also acknowledged and agreed to be bound by the terms of the ApprioHealth, LLC Proprietary Information and Invention Assignment Agreement (hereinafter "ApprioHealth-Zamora Proprietary Information Agreement"), which is attached hereto as **Exhibit H**.

52.     Echevarria also acknowledged and agreed to be bound by the terms of the ApprioHealth, LLC Proprietary Information and Invention Assignment Agreement (hereinafter "ApprioHealth-Echevarria Proprietary Information Agreement"), which is attached hereto as

Exhibit **I**. Together the ApprioHealth-Zamora Proprietary Information Agreement and ApprioHealth-Echevarria Proprietary Information Agreement are referred to as the "ApprioHealth Proprietary Information Agreements."

53.     In the ApprioHealth Proprietary Information Agreements, Zamora and Echevarria agreed, among other things, that for the period of their respective employment with the ApprioHealth (or "**My Service**" as defined in the ApprioHealth Proprietary Information Agreements) and for **two (2) years after the Termination Date** (as defined in the ApprioHealth Propriety Information Agreements), they would not directly or through others, solicit or attempt to solicit, or hire or attempt to hire, any Employee of the Apprio Parties to become an employee, consultant, or independent contractor to or for Zamora, or any other person or entity. *See* Exhibit H & I, p. 2, ¶3.1.

54.     The ApprioHealth Proprietary Information Agreements expressly cover ApprioHealth and its subsidiaries, affiliates, successors and assigns. Because of this, the ApprioHealth Proprietary Information Agreements also covers Apprio as an affiliate of ApprioHealth. *See* Exs. H & I at p. 1. Under the ApprioHealth Proprietary Information Agreements, Apprio is a non-signatory party or, at the very least, a third party beneficiary with rights flowing from the agreement.

55.     Additionally, pursuant to the ApprioHealth Proprietary Information Agreements, Zamora and Echevarria agreed for the period of their respective employment with ApprioHealth (or "**My Service**" as defined in the ApprioHealth Proprietary Information Agreements) and for **two (2) years after the Termination Date** (as defined in the ApprioHealth Propriety Information Agreements), they would not directly or indirectly: (a) solicit, divert, appropriate to or accept on behalf of any **Competing Business** (as defined in the ApprioHealth Propriety Information

14

Agreements); or (b) attempt to solicit, divert, appropriate to or accept on behalf of any Competing Business, any business from any **Customer** (as defined in the ApprioHealth Propriety Information Agreements, which included but was not limited to prospective customers of the Apprio Parties). *See* Exhibits H& I, p. 2, ¶3.2.

56.     The ApprioHealth Proprietary Information Agreements call for the application of Delaware law, without regard to conflicts of laws. *See id.* p. 3, at ¶11.1.

### III.   SHAW'S, DART'S, AND CROWELL'S PROPRIETARY INFORMATION AGREEMENTS WITH APPRIO

57.     While working for ApprioHealth as Division President, Shaw acknowledged and agreed to be bound by the terms of the Apprio, Inc. Proprietary Information and Invention Assignment Agreement (hereinafter "Apprio-Shaw Proprietary Information Agreement"), which is attached as **Exhibit J.**

58.     While working for ApprioHealth as Vice President of Business Development, Dart acknowledged and agreed to be bound by the terms of the Apprio, Inc. Proprietary Information and Invention Assignment Agreement (hereinafter "Apprio-Dart Proprietary Information Agreement"), attached hereto as **Exhibit K.**

59.     Crowell also acknowledged and agreed to be bound by the terms of Apprio, Inc. Proprietary Information and Invention Assignment Agreement (hereinafter "Apprio-Crowell Proprietary Information Agreement"), which is attached as **Exhibit L**.

60.     Together, the Apprio-Shaw Proprietary Information Agreement, Apprio-Dart Proprietary Information Agreement, and Apprio-Crowell Proprietary Information Agreement are collectively referred to as the "Apprio Proprietary Information Agreements."

61.     The Apprio Proprietary Information Agreements expressly cover ApprioHealth and its employees, customers, and business. The Apprio Proprietary Information Agreements state that Apprio, Inc. "together with its subsidiaries, affiliates, successors, or assigns" are the "Company." *See* Exhs. J, K,  and L at 1. Therefore, ApprioHealth's customer, employees, and business are protected by the Apprio Proprietary Information Agreements and ApprioHealth has rights pursuant to the Apprio Proprietary Information Agreements. Under the Apprio Proprietary Information Agreements, ApprioHealth is a non-signatory party or, at the very least, a third party beneficiary with rights flowing from the agreement.

62.     In the Apprio Proprietary Information Agreements, Shaw, Dart and Crowell agreed, among other things, that for the period of their respective employment with the Apprio Parties, namely ApprioHealth, (or **My Service** as defined in the Apprio Proprietary Information Agreements) and **for <u>two (2) years after</u> the Termination Date** (as defined in the Apprio Propriety Information Agreements), they would not directly or through others, solicit or attempt to solicit, or hire or attempt to hire, any Employee of the Apprio Parties to become an employee, consultant, or independent contractor to or for themselves or any other person or entity. *See* Exhibits J, K, & L, p. 2, ¶3.1.

63.     Additionally, pursuant to the Apprio Proprietary Information Agreements, Shaw, Dart, and Crowell agreed for the period of their respective employment with the Apprio Parties, namely ApprioHealth, (or **My Service** as defined in the Apprio Proprietary Information Agreements) and **for <u>two (2) years after</u> the Termination Date** (as defined in the Apprio Propriety Information Agreements), he would not directly or indirectly: (a) solicit, divert, appropriate to or accept on behalf of any **Competing Business** (as defined in the Apprio Proprietary Information Agreements); or (b) attempt to solicit, divert, appropriate to or accept on

behalf of any Competing Business, any business from any **Customer** (as defined in the Apprio Propriety Information Agreements, which included but was not limited to prospective customers of the Apprio Parties, including ApprioHealth). *See* Exhibits J, K, & L, p. 2, ¶3.2.

IV.  **THE INVICTA SCHEMERS' DIRECTLY COMPETING BUSINESS, INVICTA**

64.     Shortly after The Invicta Schemers' employment with ApprioHealth ended, they became involved with starting a new business entity, Invicta.

65.     In fact, he Invicta Schemers' last day working at ApprioHealth was January 15, 2020, and Shaw, Crowell and Zamora filed a certificate of formation for Invicta the shortly thereafter on Monday, February 17, 2020 with the Secretary of State in Texas.  *See* Ex. E.

66.     Prior to forming Invicta and/or contemporaneously with the formation thereof, Zamora, along with Crowell approached the Apprio Parties and unsuccessfully attempted to negotiate the transfer/purchase of ApprioHealth or its assets, including, but not limited to, its customer list and prospective customer list, as well as other intellectual property, such as software programs that were configured for its business operations. Instead of going through with this transaction with the Apprio Parties, Zamora, Crowell and Shaw copied ApprioHealth's business by taking ApprioHealth's information, knowhow, and pipeline of client to their newly created company, Invicta.

67.     Zamora, Crowell, and Dart are all listed as member-managers of Invicta on its certificate of formation. *See* Ex. E.

68.     Until recently, Invicta, Zamora and Crowell's new company, touted its relationships with Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health (which were all companies in ApprioHealth's pipeline) on their website, labelling them as

"collaborators." A screen capture from their website as of February 26, 2021 shows that Invicta was working directly with these customers from ApprioHealth's pipeline:



69.     On Invicta's website, Exhibit M, Zamora's position is listed as Chief Executive Officer, Shaw is listed as Division President, Dart is listed as Vice President of Business Development, Crowell is listed Chief Client Officer, and Echevarria is listed as Vice President of Operations. Each person taking on an identical role to the one they held at ApprioHealth.

70.     Upon information and belief, Zamora, Shaw, and Crowell solicited each other, all former ApprioHealth employees, to join Invicta. Furthermore, they also solicited Dart and Echevarria, both former ApprioHealth employees, to work with them at Invicta. Zamora admits this in his Original Petition at Paragraph 40.

## V. Causes of Action

### Count I - Tortious Interference With Prospective Contractual Relationships

71.     Plaintiffs incorporate all foregoing and following paragraphs herein by reference.

72.     Under Texas Law, a party claiming tortious interference with a contract must show: (1) an existing contract subject to interference; (2) willful and intentional act of interference with the contract; (3) that proximately cause the plaintiff's injury; and (3) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). Tortious interference with contract requires a breach of contract. *El Paso Healthcare Sys. Ltd. v. Murphy*, 518 S.W.3d 412, 421-22 (Tex. 2017).

73. As outlined in the foregoing paragraphs, Zamora, Derek, Shaw, Echevarria, and Crowell were negotiating customer relationships for ApprioHealth, including with Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health, among others. With a reasonable probability, the Apprio Parties had and would have entered into contractual relationships with these entities.

74. Invicta acted maliciously and intentionally by interfering with ApprioHealth's existing and potential relationships with prospective customers, with the purpose of harming ApprioHealth.

75. It interfered with these prospective business relationships through its independently unlawful conduct: namely by: (1) breaching their respective agreements with the Apprio Parties, the Compensation Plan Agreements, the ApprioHealth Proprietary Information Agreements, and the Apprio Proprietary Information Agreements; (2) causing their co-conspirators to breach their agreements with the Apprio Parties; (3) misappropriating the Apprio Parties' trade secrets; and (4) breaching their fiduciary duties to ApprioHealth. This conduct is independently tortious and unlawful.

76. Invicta had knowledge of these agreements between the Apprio Parties and Zamora, Shaw, Dart, Crowell, and Echevarria. Furthermore, Zamora had knowledge of the prospective customer relationships (and prospective agreements) of the Apprio Parties and the terms of those relationships.

77. Zamora, Shaw, Dart, Crowell, and Echevarria planned, prepared to form Invicta, and engaged in actions based on their discussions in order to effectuate the plans and preparations discussed between them, and then hired Zamora, Shaw, Dart, Crowell, and Echevarria all in an

attempt to unfairly compete with the Apprio Parties and move business that would otherwise be handled by the Apprio Parties to Invicta.

78.     Invicta's interference with ApprioHealth's prospective business relationships caused ApprioHealth to lose the prospective business ApprioHealth sought to obtain with those prospective customers, including some prospective customers that were in the final stages of signing on with ApprioHealth.

79.     Invicta unlawfully threatens and is causing harm to the goodwill that the Apprio Parties have built up over many years with its employees and clients, and unlawfully intrudes upon the Apprio Parties' proprietary information and prospective and existing contractual relationships with customers, with its now former employees and current employees; and has caused economic damage through loss of business relationships.

### COUNT II - Tortious Interference With Existing Contracts

80.     Plaintiffs incorporate all foregoing and following paragraphs herein by reference.

81.     As outlined in the foregoing paragraphs, Zamora, Shaw, Dart, Crowell, and Echevarria, had existing contracts with the Apprio Parties.

82.     Invicta intended to interfere with the Invicta Schemers' existing contracts with the Apprio Parties.

83.     Invicta interfered with these existing contracts namely by causing the other Invicta Schemers to breach their respective agreements with the Apprio Parties, namely the Invicta Schemers' non-complete and non-solicitation clauses.

84.     The Invicta Schemers all had knowledge of these agreements between the Apprio Parties and their respective Schemers. Invicta instead willfully and with knowledge of these

20

agreements, cased its employees and members to breach these agreements for its own financial gain. Furthermore, Invicta had knowledge of the terms of the relationships and the agreements.

85.     The Invicta Schemers planned and prepared to form Invicta, and engaged in actions based on their discussions with the co-conspirators in order to effectuate the plans and preparations discussed between them, and then hired the co-conspirators all in an attempt to unfairly compete with the Apprio Parties and move business that would otherwise be handled by the Apprio Parties to Invicta.

86.     Invicta's interference with the Invicta Schemer's existing contracts and the contracts of other Apprio Party employees caused the Apprio Parties to lose those established employment relationships and the benefit of those employment relationships.

87.     Invicta's actions unlawfully threaten and are causing harm to the goodwill that the Apprio Parties have built up over many years with its employees and clients and unlawfully intrudes upon the Apprio Parties' proprietary information, it's now former employees and current employees; and has caused economic damage through loss of business relationships.

## Count III - Violation of the Texas Uniform Trade Secrets Act

88.     Plaintiffs incorporate all foregoing and following paragraphs herein by reference.

89.     The Texas Uniform Trade Secret Act, TEX. CIV. PRAC. & REM. CODE § 134A.001 *et seq*., (the "Act") provides a remedy against Invicta for its actual and threatened improper use of ApprioHealth's and Apprio's trade secrets. Apprio and ApprioHealth's Proprietary Information rises to the level of trade secrets under the Act, and Apprio and ApprioHealth's trade secrets have been misappropriated by Counter-Defendants.

90.     The Apprio Parties' Proprietary Information regarding its business, products, product development, software, and customer relationships qualify as trade secrets. Indeed, similar

information has been afforded trade secret status under the Act, which defines a trade secret as information that:

> (a) derives independent economic value, actual or potential, from not being generally known to, and not readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

TEX. CIV. PRAC. & REM. CODE § 134A.002(6)(A), (B).

Additionally, the Texas Supreme Court set forth the following six factors which "may be useful to district courts in determining whether [certain information] constitutes a trade secret":

> (1) the extent to which the information is known outside of the business; (2) the extent to which the information is known to employees and others involved in its business; (3) the extent of measures taken by the business to guard the secrecy of its information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease with which the information could be acquired or duplicated by others.

*In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003). The Apprio Parties' proprietary financial information, product and product development information, business methods, and its customer relationship information (among many other types of information the Invicta Schemers took) all constitute trade secrets under the Act and the Texas Supreme Court's standards.

91.     As discussed above, the Apprio Parties' maintains Proprietary Information relating to its pipeline of customers and potential customers. This information, over time, helps the Apprio Parties maintain and grow those customer relationships in an efficient, cost-effective and successful fashion that its competitors cannot duplicate. The Apprio Parties also maintain confidential information concerning its financial arrangements, employee information, product and product development information, internal information such as the Apprio Parties' own price points, key personnel, vendor costs, etc.

92.     Compiling and maintaining such information provides the Apprio Parties with a competitive advantage that allows it to better serve its customers in the market. The information is not generally known and is valuable as a result, and would give any of the Apprio Parties' competitors an unfair competitive advantage.

93.     Because of the value of the information, which the Apprio Parties have spent a significant amount of time and invested substantial resources developing, the Apprio Parties restrict access to such information and requires that it be kept strictly confidential by its employees. The Apprio Parties employ a number of measures to protect against its disclosure such as limiting access to information to only employees with a need to know; password protecting its computers; issuing key cards to limit access to certain areas of its distribution centers and headquarters, terminating access to proprietary information at the conclusion of employment, and requiring its employees to sign nondisclosure, nonsolicitation and, in some cases, noncompetition agreements.

94.     If Invicta is allowed to retain, use, and/or disclose the Apprio Parties' trade secret information, the Apprio Parties will be irrevocably harmed.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiffs, Apprio and ApprioHealth, request that the Court grant them the following relief:

A.     All compensatory damages authorized by law, including, but not limited to, lost profits, disgorgement of profits, interest, costs and attorneys' fees; and

B.     Any other and further relief as the Court deems just and equitable.

Dated: October 19, 2021

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

By: *_/s/ Theresa Wanat_*
    Theresa Wanat
    Texas Bar No. 24071469
    Federal ID No. 3063740
    Theresa.wanat@hklaw.com
    811 Main St., Suite 2500
    Houston, TX 77002
    (713) 244-6877 (Main)
    (713) 821-7001 (Fax)

    Sara Schretenthaler Staha
    Texas Bar No. 24088368
    Sara.staha@hklaw.com
    200 Crescent Court, Suite 1600
    Dallas, TX 75201
    (214) 964-9500 (Main)
    (214) 964-9501 (Fax)

**COUNSEL FOR APPRIOHEALTH, LLC, AND APPRIO, INC.**